# IN THE COURT OF APPEALS OF IOWA

No. 17-2092
Filed September 26, 2018

## IN RE THE MARRIAGE OF STACY HERUM AND SCOTT HERUM

**Upon the Petition of**
**STACY HERUM, n/k/a STACY ZUMBACH,**
　　　Petitioner-Appellee,

**And Concerning**
**SCOTT HERUM,**
　　　Respondent-Appellant.

_____

　　　Appeal from the Iowa District Court for Emmet County, Nancy L. Whittenberg, Judge.


　　　An ex-husband appeals an order directing distribution of support payments held in escrow awaiting resolution of his modification action. **AFFIRMED.**


　　　Christine B. Skilton of Cronin, Skilton & Skilton, PLLC, Charles City, for appellant.

　　　Laura J. Parrish of Miller, Pearson, Gloe, Burns, Beatty & Parrish, PLC, Decorah, for appellee.


　　　Considered by Danilson, C.J., and Vogel and Tabor, JJ.

**TABOR, Judge.**

For the second time this year, Scott Herum appeals a district court decision concerning his spousal and child support obligations. A few months ago, we affirmed an order largely denying his requests to modify the 2012 decree dissolving his marriage to Stacy Zumbach. *In re Marriage of Herum*, No. 17-1161, 2018 WL 2084852 (Iowa Ct. App. May 2, 2018). While that appeal was pending, Scott unsuccessfully moved to disqualify the district court judge assigned to the modification action. In this appeal, he renews his call for the judge's disqualification and attacks a December 2017 order directing the clerk of court to distribute support payments. We affirm the district court and order Scott to pay appellate attorney fees.

## I. Facts and Prior Proceedings

In February 2015, Scott filed a petition to modify his divorce decree, including requests to terminate or reduce his spousal and child support obligations. The following month, Chief Judge Duane E. Hoffmeyer of the Third Judicial District assigned Judge Nancy L. Whittenburg to preside over all pretrial, trial, and posttrial matters in the modification case.

Scott's failure to keep current with his support obligations prompted Stacy to file a contempt action in July 2016. Because the contempt hearing took place on a court service day, Judge Don E. Courtney presided. In light of Scott's payment of all child support and alimony arrearages (totaling more than $10,000) just before the rule-to-show-cause hearing in October 2016, Judge Courtney found "Scott lacked the requisite intent" to merit a finding of contempt. But the court noted "it was clear that Scott was in default on his child support and alimony

obligations" and as a remedy the court awarded Stacy $2000 in attorney fees. Scott filed an application to release liens on the child and spousal support obligations, which Stacy resisted. The district court ordered Scott to enter $11,520 into an escrow account until Judge Whittenberg "makes a decision as to whether that amount is owed" by resolving the modification action.

In June 2017, Judge Whittenberg ruled on Scott's modification action, denying all his requests—except to enforce a planned reduction in child support when the eldest of their three children reached the age of eighteen. Stacy applied for distribution of the escrow funds. Scott filed a resistance—labeled an "answer"—as well as a motion to reconsider. District court administration assigned the matter to Judge Carl J. Petersen, who was then court-service-day judge for Emmett County. On July 19, Judge Whittenberg denied the motion to reconsider. That same day, Judge Whittenberg issued an order rescinding prior orders of assignment:

> Now on this date this matter has been brought to the attention of the Court by District Court Administration. The undersigned is currently the individually assigned judge in this matter. On June 16, 2017, an Application for Distribution of Support Payments was filed by the Petitioner. On June 22, 2017, the Respondent replied to the application by filing an "Answer" to the application. The filing of an "Answer" triggered the individual assignment of the Honorable Carl J. Petersen to his matter, as well as the scheduling on a nonjury modification trial on September 6, 2017. The undersigned finds that the Application for Distribution is a matter which should be heard by the undersigned. Accordingly, the assignment of Judge Carl J. Petersen and the scheduling on a nonjury modification trial should be rescinded.

Judge Whittenberg set Stacy's application for a telephone hearing. Scott filed a motion to disqualify, asserting Judge Whittenberg was biased against him.

In a July 24 order, Chief Judge Duane E. Hoffmeyer explained:

> This file is presented to the court at the request of District Court Administration.
>
> District Court Administration receives a list of "answers filed" by case number and she then, if a decree has been entered, assumes it is a modification and proceeds accordingly. . . .
>
> . . . [I]t is clear that through mistake or inadvertence the action taken by District Court Administration was upon the belief there had been a modification filed and a trial date was needed. Obviously that is an error.

Accordingly, the chief judge set aside the order assigning the "modification" to Judge Petersen and affirmed Judge Whittenberg's order. Following a telephonic hearing on July 28, Judge Whittenberg denied Scott's request that she recuse herself as the assigned judge. Scott unsuccessfully sought interlocutory review. In December 2017, the district court filed its ruling on Stacy's application for distribution of the support payments. Scott appeals.

## II. Discussion

### A. Denial of Motion for Recusal

Scott requested Judge Whittenburg recuse herself from any further proceedings in the dissolution modification action, citing Iowa Code of Judicial Conduct Rules 51:2.11(A)(1) and 51:2.9(A)(1)(a). She declined to do so. On appeal, Scott contends the judge should have recused herself after she arranged "ex parte" to consider Stacy's application for distribution of support payments. He argues the judge demonstrated a bias against him that should have resulted in her disqualification.[1]

---

[1] Our supreme court has recognized "recusal" as a synonym of "disqualification." *Taylor v. State*, 632 N.W.2d 891, 896 (Iowa 2001).

"We review a judge's recusal decision for an abuse of discretion." *State v. Millsap*, 704 N.W.2d 426, 432 (Iowa 2005) (citing *Taylor*, 632 N.W.2d at 893). A court abuses its discretion when it acts unreasonably or bases its decision on untenable grounds. *Id.* "A ground or reason is untenable when it is not supported by substantial evidence or when it is based on an erroneous application of the law." *Id.* (citation omitted).

The Iowa Code of Judicial Conduct sets out the standards for recusal. "A judge shall uphold and apply the law, and shall perform all duties of judicial office fairly and impartially." Iowa Code of Judicial Conduct R. 51:2.2. The code lists certain circumstances requiring recusal. Iowa Code of Judicial Conduct R. 51:2.11(A)(1)–(6). One circumstance is when the "judge has a personal bias or prejudice concerning a party or a party's lawyer, or personal knowledge of facts that are in dispute in the proceeding." *Id.* r. 51:2.11(A)(1). But the listed circumstances are non-exhaustive, and the "judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned." *Id.* r. 51:2.11(A).

The test for disqualification is objective and the party seeking disqualification—here, Scott—bears the burden of proof. *See Millsap*, 704 N.W.2d at 432. "Only personal bias or prejudice stemming from an extrajudicial source constitutes a disqualifying factor." *Id.* A judge's opinions formed "on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deepseated favoritism or antagonism that would make fair judgment impossible." *In re C.L.C. Jr.*, 798 N.W.2d 329, 337 (Iowa Ct. App. 2011) (quoting

*Liteky v. United States*, 510 U.S. 540, 551 (1994)). "Judicial predilection or an attitude of mind resulting from the facts learned by the judge from the judge's participation in the case is not a disqualifying factor." *Millsap*, 704 N.W.2d at 432. A judge's obligation not to recuse herself when there is no cause to do so is tantamount to her obligation to recuse when cause exists. *In re Marriage of Kassouf*, No. 04-1720, 2005 WL 724589, at *2 (Iowa Ct. App. Mar. 31, 2005) (citing *McKinley v. Iowa Dist. Court*, 542 N.W.2d 822, 827 (Iowa 1996)).

To prove Judge Whittenberg evinced a personal bias against him, Scott points to several passages from the modification transcript, including an apology the judge offered to Stacy for a clerical error that led to her application not being set for the appropriate hearing; a statement by the judge that it appeared Scott was "attempting to thwart [Stacy's] ability to speak with" a potential witness; the court's admonishment of Scott for an outburst disagreeing with counsel when he was not on the stand as a sworn witness; the court's question to Stacy on the stand about her understanding of the purpose of the alimony award; and various instances of the judge controlling the flow of testimony. We find no inkling of personal bias in these examples. Nor do we find the challenged statements stem from an extrajudicial source. We entrust trial judges with broad discretion to conduct trials in a manner to ensure decorum and the effective presentation of evidence. *State v. Johnson*, 756 N.W.2d 682, 689 (Iowa 2008). Even a judge's remarks critical of counsel or parties do not mandate recusal unless they reveal an extrajudicial source or make a fair judgment impossible. *C.L.C.*, 798 N.W.2d at 337. The instant record does not support Scott's assertions.

Scott also relies on Rule 51:2.9(A)(1)(a), which prohibits "ex parte communications" as follows:

(A) A judge shall not initiate, permit, or consider ex parte communications, or consider other communications made to the judge outside the presence of the parties or their lawyers, concerning a pending matter or impending matter, except as follows:
(1) When circumstances require it, ex parte communication for scheduling, administrative, or emergency purposes, which does not address substantive matters, is permitted, provided:
(a) the judge reasonably believes that no party will gain a procedural, substantive, or tactical advantage as a result of the ex parte communication.

The exchanges Scott seeks to label as "ex parte communications" were procedural conferences with court administration concerning scheduling and judicial case assignment. Scott asserts Judge Whittenberg finagled the assignment of Stacy's application for distribution of support payments so the judge could impart her biases on the proceedings. But, as explained by both Judge Whittenberg and Chief Judge Hoffmeyer, she was already assigned to the case and should have received the application for distribution in the first place. Scott's aspersions concerning improper ex parte communication are without merit.

## B. Order for Distribution of Support Payments

Scott next contends we should overrule the district court's order granting Stacy's application for distribution of support payments. He argues either res judicata or equitable estoppel by acquiescence bars Stacy's recovery. Scott asserts: "This matter was resolved by Judge Courtney's decision." Scott's contentions are neither legally sound nor supported by the factual record.

In ruling on Stacy's application for a rule-to-show-cause hearing, Judge Courtney declined to find Scott in contempt, but recognized his support payments

were in default. The court ordered Scott to place support payments totaling $11,520 in escrow until Judge Whittenburg ruled on the modification matter. The concept of res judicata prevents a party from relitigating a claim that has already been determined by a final judgment. *George v. D.W. Zinser Co.*, 762 N.W.2d 865, 868 (Iowa 2009). The issue of distribution of the support payments was not determined by Judge Courtney's decision; in fact, it was expressly left open. Stacy's request for distribution was not barred by res judicata.

We likewise reject Scott's claim of estoppel by acquiescence. *See Markey v. Carney*, 705 N.W.2d 13, 22 (Iowa 2005) (holding theory was not available to father for purposes of challenging back child support award). As noted in Scott's first appeal, "Iowa case law prevents courts from imposing a retroactive reduction in child support before modification is ordered." *Herum*, 2018 WL 2084852, at *8. And as Stacy argues in this appeal, her signing of a release of lien in August 2014 did not constitute evidence Scott was current in his support payments at all times relevant to this proceeding. Stacy took affirmative action to enforce Scott's support obligation; nothing signals her intent to waive the right to child support.

## C. Appellate Attorney Fees

Stacy requests appellate attorney fees. In modification proceedings, the district court "may award attorney fees to the prevailing party" in a reasonable amount. Iowa Code § 598.36 (2018). That provision also gives us discretion to award appellate attorney fees. *In re Marriage of Michael*, 839 N.W.2d 630, 639 (Iowa 2013). We consider the parties' respective abilities to pay, whether a party resisting the modification petition was successful, and whether a party has been obliged to defend the district court's decision on appeal. *Id.* After considering

these factors, we order Scott to pay $2000 toward Stacy's appellate representation.  Costs of this appeal are assessed to Scott.

**AFFIRMED.**