STATE of Iowa, Appellee,

v.

Richard Allen MILLSAP,
Sr., Appellant.

No. 03–1504.

Supreme Court of Iowa.

Sept. 2, 2005.

Rehearing Denied Oct. 12, 2005.

Linda Del Gallo, State Appellate Defender, and Martha J. Lucey, Assistant Appellate Defender, for appellant, and Richard Allen Millsap, Sr., pro se.

Thomas J. Miller, Attorney General, Kevin Cmelik, Assistant Attorney General, John P. Sarcone, County Attorney, and Jim Ward, Assistant County Attorney, for appellee.

TERNUS, Justice.

The defendant, Richard Allen Millsap, Sr., was convicted in a bench trial of two counts of child endangerment in violation of Iowa Code section 726.6(1)(*a*) (2001) and one count of driving while barred in violation of Iowa Code section 321.561.

Millsap's convictions resulted from the deaths of his two young nephews who fell from the bed of a truck that the defendant was driving. Millsap appeals, raising five issues: (1) the evidence was insufficient to prove the necessary mens rea for child endangerment; (2) the trial judge abused his discretion in refusing to recuse himself; (3) the trial court failed to exercise its discretion when sentencing the defendant to prison on the driving-while-barred conviction; (4) the trial court considered an improper factor in sentencing the defendant to consecutive prison terms; and (5) section 726.6(1) is unconstitutionally vague. Upon our review of the record and the arguments of the parties, we affirm with one exception. We agree the court failed to exercise its discretion when it imposed sentence on the driving-while-barred charges. Therefore, we vacate that sentence and remand for resentencing.

## I. *Background Facts and Proceedings.*

■ We view the evidence in the light most favorable to the State. *See State v. Arnold,* 543 N.W.2d 600, 602 (Iowa 1996).

The tragic accident giving rise to this case occurred on September 7, 2002, when Millsap enlisted the assistance of his two nephews, Mark, age 10, and Fred, age 9, in removing brush and tree limbs from a property in Des Moines. The boys often helped their uncle in performing handyman jobs, and the record showed the defendant had a history of providing his nephews with guidance and assistance.

On the day in question, the defendant drove his truck to the job site, notwithstanding the prior revocation of his driving privileges. The defendant's one-ton truck had an open bed equipped with side panels. The boys rode in the back. On the way to the work site, another driver pulled along side the truck and informed the defendant that one of the boys was hanging his legs over the back end of the truck bed. The defendant yelled through the sliding window in the cab for the boy to "Get up there like I told you and sit down." The other driver noted the boys did as they were told by their uncle. The defendant testified the boys were good kids and always minded him.

The group proceeded to the work site, where they removed brush and tree limbs and loaded them on the bed of the truck. When they were finished, the defendant placed the boys within the brush on the truck bed, and proceeded to drive through the city. Witnesses who saw the truck testified that the tree limbs extended beyond the height of the truck's cab and side panels. They also said the branches were lifted up by the wind when the vehicle accelerated. Some drivers, noting the likelihood that branches might fly off, slowed down to create a greater distance between their vehicle and the defendant's truck. Witnesses also reported they saw the two boys sitting on top of the branches, trying to hold them down.

As the truck proceeded down Southeast 14th Street, a combination of wind and the vehicle's momentum caused the unsecured branches to blow up in the air, taking the defendant's nephews with them. The boys were hurled to the concrete pavement, sustaining fatal head injuries.

The State charged the defendant with two counts of child endangerment in violation of Iowa Code section 726.6(1)(*a*), two counts of homicide by vehicle in violation of Iowa Code section 707.6A(2)(*a*), and one count of driving while barred in violation of Iowa Code section 321.561. The case was tried to the court. The court granted the defendant's motion for judgment of acquittal on the two homicide-by-vehicle counts, but found the defendant guilty of the remaining charges. After receiving

consecutive prison sentences, the defendant appealed.

## II. *Sufficiency–of–the–Evidence.*

A. *Claim.* The defendant contends the district court erred in denying his motion for directed verdict on the child-endangerment charges. He asserts the State failed to establish his guilt on those counts because the evidence was insufficient to support a finding that he knowingly subjected his nephews to a substantial risk of physical harm.

■■ B. *Scope of review.* Challenges to the sufficiency of the evidence are reviewed for the correction of errors of law. *Arnold,* 543 N.W.2d at 602. Our goal is " 'to determine whether a rational trier of fact could have found the defendant guilty of the offense charged' beyond a reasonable doubt." *State v. Anspach,* 627 N.W.2d 227, 231 (Iowa 2001) (citation omitted).

C. *Discussion.* We begin our discussion with a review of the statute under which the defendant was convicted, as the parties disagree on the requirements of this law. The defendant was convicted of violating section 726.6(1)(*a*), which provides in pertinent part:

1. A person who is the parent, guardian, or person having custody or control over a child or a minor under the age of eighteen with a mental or physical disability, commits child endangerment when the person does any of the following:

a. Knowingly acts in a manner that creates a substantial risk to a child or minor's physical, mental or emotional health or safety.

Iowa Code § 726.6(1)(*a*). The parties' dispute centers on the knowledge element of the statute, specifically, whether "knowing-ly" modifies "acts" or modifies "acts in a manner that creates a substantial risk."

■ We recently addressed this precise issue in *State v. James,* 693 N.W.2d 353 (Iowa 2005). In *James,* this court held that to establish a violation of section 726.6(1)(*a*), the State must prove a defendant acted with knowledge that he or she was creating a substantial risk to the child's safety. 693 N.W.2d at 357. Thus, it is the appreciation of the risk to the child or minor posed by one's conduct that creates criminal culpability under this statute.

■■ Notwithstanding the defendant's protestations to the contrary, we think there is sufficient evidence he acted with the required knowledge. In this regard, we note the defendant's knowledge may be proved not only by direct evidence, but also by reasonable inferences drawn from the circumstances surrounding the accident. *See State v. Miller,* 308 N.W.2d 4, 7 (Iowa 1981) ("Knowledge or intent is seldom capable of direct proof, but usually is established from the surrounding circumstances.").

The trial court specifically found the defendant was aware there was substantial risk associated with children riding in the back end of an unenclosed truck. The court noted the defendant testified his nephews had ridden in the back of the truck on a number of occasions, and each time the defendant would instruct them how to ride there. The court concluded the fact the defendant thought it necessary to instruct his nephews as to how to ride in the back of the truck indicated the defendant's awareness of the substantial risk to children riding in that location. The court also discounted the defendant's testimony that the children always obeyed his instructions, observing the defendant had been made aware earlier the same day that one of the boys was not following the

rules. Although the defendant contended he had placed the children among the brush, the testimony of witnesses clearly placed the boys atop the brush pile. As the court pointed out, even if the children had been situated down in the brush initially, "the boys, acting as kids do, repositioned themselves" later. The court further observed, "Kids being kids always require close monitoring, especially when they have been placed in questionable safety situations." We think there was substantial evidence to support the court's decision on this disputed issue of fact, as the court itself explained in its ruling.

The defendant argues, however, that children have long ridden in the back of pickup trucks and surely adults permitting this activity are not guilty of child endangerment. The problem with the defendant's example is that the situation presented by the case before us is more egregious than children simply riding in the back of a pickup. *Cf. Anspach*, 627 N.W.2d at 233 (considering the totality of the circumstances in determining whether person would know his actions placed children in articulable danger). The bed of the defendant's truck was equipped with side panels, but only had a wooden plank across the end that provided little protection against persons or branches falling or being blown out the back of the truck. Moreover, the children were young, and the defendant had placed them amidst improperly loaded tree limbs that had not been secured to the truck bed. It was easily foreseeable that the branches might be blown off the truck, taking the children with them. See *Miller*, 308 N.W.2d at 7 (stating knowledge may be inferred from circumstances). Such an event presented a substantial risk to their safety. That is all the State was required to prove: defendant's knowledge that the children were in a position of substantial risk. *See State v. Riggs*, 2 S.W.3d 867, 873 (Mo.

1999) (holding, under identical statutory language, that prosecution need not prove defendant knew death would result from his conduct, only that child would be endangered by his conduct); *see also Anspach*, 627 N.W.2d at 232–33 (holding section 726.6(1)(*a*) does not require proof that injury was likely, only that there was a "very real possibility of danger to a child's physical health or safety"). Therefore, the trial court did not err in refusing to grant the defendant's motion for directed verdict on the child-endangerment charges.

### III. *Recusal Issue.*

A. *Pertinent factual background.* After the trial court found the defendant guilty, the defendant filed a complaint against the trial judge with the Commission on Judicial Qualifications. *See generally* Iowa Ct. R. ch. 52. In addition, he began a letter-writing campaign to the trial judge and the chief judge of the judicial district. In these letters, he complained that the trial judge had misinterpreted the child-endangerment statute and suggested there was a conspiracy to convict him.

The trial judge then convened a hearing with counsel and the defendant to address the defendant's continuing contact with the court, which the court viewed as an attempt to influence the court's sentencing decision and/or the court's reconsideration of its verdict. The judge advised the defendant that he had read the defendant's first letter, but all subsequent correspondence had and would be placed in the file unopened. The judge told the defendant that the defendant would have an opportunity at the sentencing hearing to say "anything and everything" that he wanted to tell the court.

At the subsequent sentencing hearing, defense counsel requested that the trial

judge recuse himself based on the charges made against the judge by the defendant. The judge refused, stating it appeared to the court that the basis for the defendant's complaint was the difference in opinion between the defendant and the court as to the proper interpretation of the applicable statutes. Noting this issue related to a legal matter raised in the defendant's motion in arrest of judgment, the court concluded there was no basis for recusal.

 B. *Discussion.* We review a judge's recusal decision for an abuse of discretion. *Taylor v. State,* 632 N.W.2d 891, 893 (Iowa 2001). The court abuses its discretion when its decision is based on untenable grounds or it has acted unreasonably. *Id.* at 894. " 'A ground or reason is untenable when it is not supported by substantial evidence or when it is based on an erroneous application of the law.' " *Bousman v. Iowa Dist. Ct.,* 630 N.W.2d 789, 796 (Iowa 2001) (citation omitted).

 There are also constitutional overtones to a recusal decision in a criminal case because the Due Process Clause requires an impartial judge. *See State v. Mann,* 512 N.W.2d 528, 532 (Iowa 1994); *accord United States v. Meyer,* 462 F.2d 827, 836 (D.C.Ct.App.1972). Accordingly, Iowa's Code of Judicial Conduct provides that "[a] judge should disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned." Iowa Code of Judicial Conduct canon 3(C)(1); *accord Mann,* 512 N.W.2d at 532. This test for disqualification is an objective one. *Mann,* 512 N.W.2d at 532. The burden of showing grounds for recusal is on the party seeking recusal. *Taylor,* 632 N.W.2d at 894.

 It appears the defendant claims the trial judge in this case was prejudiced against him due to the defendant's filing of a complaint against the judge with the Commission on Judicial Qualifications, as well as the defendant's letter-writing campaign to the trial judge and the chief judge. Canon 3 suggests that a judge's impartiality might be questioned where the judge "has a personal bias or prejudice concerning a party." Iowa Code of Judicial Conduct canon 3(C)(1)(a). Only personal bias or prejudice stemming from an extrajudicial source constitutes a disqualifying factor. *See State v. Smith,* 282 N.W.2d 138, 142 (Iowa 1979). Judicial predilection or an attitude of mind resulting from the facts learned by the judge from the judge's participation in the case is not a disqualifying factor. *See id.; State v. Smith,* 242 N.W.2d 320, 324 (Iowa 1976). In addition, "actual prejudice must be shown before a recusal is necessary." *State v. Sinclair,* 582 N.W.2d 762, 766 (Iowa 1998).

Upon our review of the record in the present case, we find no grounds for recusal that would support a conclusion the trial judge abused his discretion in denying the defendant's recusal motion. First, the defendant's criticism of the judge's interpretation of the controlling statute is not the type of bias that warrants recusal. *See Smith,* 242 N.W.2d at 324 (stating judge's "definite views on the law[] create no personal bias since they do not stem from an extrajudicial source"). Secondly, the mere fact the defendant filed a complaint with the Commission does not automatically require recusal. *See In re Interest of A.B.,* 445 N.W.2d 783, 784 (Iowa 1989) (implying recusal was not required "whenever a party claimed there was an appearance of impropriety"). Moreover, the charges made in the complaint—erroneous rulings on legal issues—are not the kind of charges that would lead a reasonable person to question the judge's impartiality notwithstanding the defendant's filing of the complaint.

The present case can be contrasted with *In re Inquiry Concerning Stigler,* 607 N.W.2d 699 (Iowa 2000), wherein this court held the presiding judge should have recused himself. In that case, the judge had expressed a bias towards the party's attorney due to the attorney's filing of a complaint against the judge with the Commission on Judicial Qualifications. *Stigler,* 607 N.W.2d at 708–09. Notably, the allegations of judicial misconduct in the *Stigler* case were much more personal to the judge than the allegations in the case before us. In *Stigler,* the judge was accused of "improperly [injecting] himself into [a scheduling matter] rather than following regular scheduling procedures." *Id.* at 703. In addition, the complaining lawyer alleged the judge "had conducted a hearing without counsel of record who was known to be engaged in another trial in the same courthouse," and the judge "had engaged in inappropriate ex parte communications with [the opposing] attorney." *Id.* Clearly, such charges would more likely produce an adverse reaction by the judge than would mere allegations that the judge had erred in his interpretation of the law.

The nature of the complaint and the judge's admitted bias supported disqualification in *Stigler.* Neither circumstance is present here. We conclude the trial judge did not abuse his discretion in refusing to recuse himself from this case.

IV. *Sentencing.*

A. *Issues.* The trial court sentenced the defendant to an indeterminate ten-year sentence on each child-endangerment conviction. *See* Iowa Code §§ 726.6(2) (classifying child endangerment as a class "C" felony when serious injury results), 902.9 (providing for ten-year sentence for class "C" felony). The defendant was also given an indeterminate two-year sentence on the

driving-while-barred conviction. *See id.* §§ 321.561 (making driving while barred an aggravated misdemeanor), 903.1(2) (providing two-year sentence for aggravated misdemeanors). The court ordered these sentences to run consecutively.

The defendant raises two challenges to his sentencing: (1) the court failed to exercise its discretion in imposing the sentence for his driving-while-barred conviction; and (2) the court considered an improper factor in imposing consecutive sentences on the child-endangerment convictions, namely, the separate and distinct nature of the two victims. We will separately address each contention.

B. *Driving-while-barred sentence.* "When a sentence is not mandatory, the district court must exercise its discretion in determining what sentence to impose." *State v. Thomas,* 547 N.W.2d 223, 225 (Iowa 1996). With respect to the child-endangerment convictions, the sentence was mandatory—imprisonment—because felonious child endangerment is a forcible felony. *See* Iowa Code §§ 702.11 (including "felonious child endangerment" as a forcible felony), 907.3 (stating options of deferred judgment, deferred sentence and suspended sentence are not available for forcible felonies). In contrast, driving while barred is an aggravated misdemeanor for which probation is an option. *See* Iowa Code §§ 321.561 (classifying driving while barred as an aggravated misdemeanor), 907.3 (allowing trial court to defer sentence and assign the defendant to the judicial district department of corrections or to release a defendant on probation upon granting a deferred judgment or suspended sentence, with exceptions not applicable to driving-while-barred offense).

The sentencing court here gave three reasons for denying probation on the driving-while-barred and child-endangerment charges: (1) the defendant's "prior crimi-

nal history"; (2) "it would unduly lessen the seriousness of the offense"; and (3) "probation is not available due to the offenses of child endangerment." The defendant asserts because the trial court thought it had to sentence the defendant to prison on the driving-while-barred conviction "due to the offenses of child endangerment," the court failed to exercise discretion on whether he should be granted probation on the driving-while-barred charge.

The State argues that although probation is ordinarily an option for an aggravated misdemeanor, that avenue is barred when the sentence on the aggravated misdemeanor is served consecutively to the sentence on a forcible felony for which imprisonment is mandatory. The State cites Iowa Code section 901.8, which states "if consecutive sentences are specified in the order of commitment, the several terms shall be construed as one continuous term of imprisonment."

This court interpreted and applied section 901.8 in *State v. Kapell*, 510 N.W.2d 878, 880 (Iowa 1994). In that case, the defendant was ordered to serve consecutive sentences: a two-year sentence in a state institution subject to the department of corrections and a five-day sentence to be served in the county jail. *Kapell*, 510 N.W.2d at 879. We held these sentences constituted one continuous term of imprisonment under section 901.8, and so "in determining the propriety of the court's order, we treat[ed] the sentences on both charges as one." *Id.* at 880. Noting that section 903.4 required that "any person sentenced to confinement for a period of more than one year shall be committed to the custody of the Department of Corrections," we held the court's five-day sentence in the county jail was illegal because the defendant's combined sentence exceeded one year. *Id.*

The same reasoning does not apply to sentences on multiple convictions only some of which require mandatory imprisonment. By its own terms, section 901.8 is triggered when "consecutive sentences are specified in [an] *order of commitment.*" Iowa Code § 901.8 (emphasis added). That prerequisite will not necessarily be met just because one offense mandates confinement, as we will explain.

 If a sentencing court chooses to suspend a sentence, the court has authority to "place the defendant on probation upon such terms and conditions as it may require." *Id.* § 907.3(3). "Probation" is a procedure under which the defendant is released subject to supervision. *Id.* § 907.1(4). Accordingly, a defendant placed on probation for a particular offense is not sentenced to confinement on that charge. Thus, there is no order of commitment on the suspended sentence. *See id.* § 901.7 ("In imposing a sentence *of confinement* for more than one year, the court shall commit the defendant to the custody of the director of the Iowa department of corrections." (Emphasis added.)). Consequently, when the suspended sentence is imposed in a case that includes a charge requiring mandatory imprisonment and is made consecutive to the mandatory sentence, section 901.8 is not implicated because the defendant is not *committed* to serve consecutive sentences. He is committed to serve only the mandatory term of imprisonment; the suspended sentence, for which he is not confined, follows upon completion of the term of imprisonment.

 As our discussion illustrates, a sentencing court has the option of sentencing a defendant to confinement on one charge and imposing a consecutive, but suspended, sentence on another charge. While this may be an unusual procedure, section 901.8 does not prevent it. Consequently, the fact that imprisonment was

required on the child-endangerment charges in this case did not preclude the court from giving a consecutive, suspended sentence on the driving-while-barred charge.

Because the sentencing court believed it had no ability to grant probation to the defendant on the driving-while-barred charge, it failed to exercise its discretion to consider a suspended sentence as a sentencing option. For this reason, the sentence on the driving-while-barred charge is vacated, and the case is remanded for sentencing on that conviction. *See State v. Ayers,* 590 N.W.2d 25, 27 (Iowa 1999) (stating a sentencing court's failure to exercise its discretion "calls for a vacation of the sentence and a remand for resentencing").

■ C. *Child-endangerment sentences.* One of the three reasons given by the court for its decision to impose consecutive sentences was "the separate and distinct nature of the two victims in this matter." The defendant asserts this fact is an improper factor to consider for purposes of sentencing.

■ A sentencing court may properly consider the nature of the offense and the attending circumstances in sentencing a defendant. *State v. Johnson,* 513 N.W.2d 717, 719 (Iowa 1994). One of the circumstances of the defendant's criminal conduct here was the fact there were two victims.

Although the defendant relies on our decision in *State v. Laffey,* 600 N.W.2d 57 (Iowa 1999), we think *Laffey* is distinguishable because in that case the sentencing court did not rely simply on the existence of multiple victims. In *Laffey,* the court imposed consecutive sentences for offenses involving two victims based on the difficulty in explaining to the two young victims why the defendant had committed two crimes but had received only one sentence.

600 N.W.2d at 62. We held consideration of the difficulty in explaining the sentence to the victims was improper because any such difficulty did "not go to the nature or severity of the offense" and was "unrelated to the circumstances of the crime." *Id.*

In contrast here, the existence of two victims is clearly a circumstance of the crime. In addition, the fact that two deaths resulted from the defendant's criminal actions increased the severity of the offense. Therefore, we do not think the trial court abused its discretion in considering this fact in choosing an appropriate sentence.

V. *Vagueness Claim.*

A. *Knowledge requirement.* The defendant argues that if the mens rea element under section 726.6(1)(*a*) does not include knowledge of a substantial risk to the child or minor, the statute is unconstitutionally vague. Because we have interpreted section 726.6(1)(*a*) to require such knowledge, we need not address the defendant's alternative vagueness challenge to this part of the statute.

■ B. *Custody-or-control-of-a-child-or-minor element.* The defendant also challenges as vague the statutory language limiting section 726.6(1) to those having custody or control of "a child or a minor under the age of eighteen with a mental or physical disability." The defendant contends it is unclear whether the clause, "with a mental or physical disability," modifies "child" and "minor under the age of eighteen" or just "minor under the age of eighteen." This question is important, he argues, because his nephews did not suffer from any mental or physical disability. Consequently if the disability limitation applies to children, section 726.6(1) would not apply to this incident.

"[T]he void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson,* 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903, 909 (1983); *accord State v. Watkins,* 659 N.W.2d 526, 535 (Iowa 2003). Statutory terms meet this constitutional test if their meaning "is fairly ascertainable by reference to similar statutes, prior judicial determinations, reference to the dictionary, or if the questioned words have a common and generally accepted meaning." *State v. Aldrich,* 231 N.W.2d 890, 894 (Iowa 1975); *accord State v. Hunter,* 550 N.W.2d 460, 465 (Iowa 1996). In considering whether the statute is unconstitutionally vague, "we presume the statute is constitutional and give it any reasonable construction necessary to uphold it." *Hunter,* 550 N.W.2d at 462.

Importantly, the legislature has defined the term "child" for purposes of the criminal code. Section 702.5 defines "child" as "any person under the age of fourteen years." If we substitute this definition for the statutory term "child," the meaning of the statute becomes indisputable. Making the suggested substitution, one can say that section 726.6(1) applies to persons having custody or control of a person under the age of fourteen years or a minor under the age of eighteen with a physical or mental disability. It seems clear to us that the language "with a physical or mental disability" cannot modify "child" because that would make the term "child" unnecessary, as that term would then not expand the range of minors protected by the statute. *See Hajek v. Iowa State Bd. of Parole,* 414 N.W.2d 122, 124 (Iowa 1987) (noting "rule which presumes the legislature does not intend for words to be redundant"). That is because children under the age of fourteen with a physical or mental disability would already be included in the statute under the category of minors under the age of eighteen with a physical or mental disability. It is apparent the legislature sought to protect all minors under the age of fourteen and, in addition, minors between the ages of fourteen and eighteen who had a physical or mental disability.

We conclude the meaning of section 726.6(1) is easily ascertainable by reference to the statutory definition of "child" provided by the legislature. Therefore, the statute gives fair warning of the prohibited conduct and does not violate the void-for-vagueness doctrine.

VI. *Summary.*

The evidence is sufficient to support the trial court's finding the defendant knowingly acted in a manner that created a substantial risk to the physical safety of the children in his custody. In addition, the trial judge did not abuse his discretion by failing to recuse himself after the defendant filed a complaint against the judge with the Commission on Judicial Qualifications.

The trial court failed to exercise its discretion to consider probation as a sentencing option on the driving-while-barred charge. The requirement that the defendant be sentenced to confinement on the child-endangerment charges did not preclude the option of a suspended sentence on the driving-while-barred charge. The court did not, however, abuse its discretion in determining the appropriate sentences on the child-endangerment charges by considering the fact there were two victims.

Finally, the child endangerment statute is not void for vagueness because its meaning is readily ascertainable.

JUDGMENT OF CONVICTION AND SENTENCE ON CHILD–ENDANGERMENT CHARGES AND JUDGMENT OF CONVICTION ON DRIVING–WHILE–BARRED CHARGE AFFIRMED. SENTENCE ON DRIVING–WHILE–BARRED CHARGE VACATED, AND CASE REMANDED FOR RESENTENCING ON THAT CHARGE.