# IN THE COURT OF APPEALS OF IOWA

No. 22-1987
Filed November 21, 2023

**STATE OF IOWA,**
　　　Plaintiff-Appellee,

**vs.**

**KEVIN ISIDRO MARTINEZ,**
　　　Defendant-Appellant.
_____

　　　Appeal from the Iowa District Court for Polk County, Scott D. Rosenberg, Judge.


　　　Kevin Isidro Martinez appeals the sentences imposed following his pleas of guilty to two counts of intimidation with a dangerous weapon. **AFFIRMED.**


　　　Benjamin D. Bergmann and Alexander Smith of Parrish Kruidenier Dunn Gentry Brown Bergmann & Messamer L.L.P., Des Moines, for appellant.

　　　Brenna Bird, Attorney General, and Martha E. Trout, Assistant Attorney General, for appellee.


　　　Considered by Greer, P.J., and Schumacher and Badding, JJ.

**BADDING, Judge.**

When Kevin Isidro Martinez was sixteen years old, he participated in a drive-by shooting at a high school that killed one person and injured two bystanders. He was jointly charged with two others for first-degree murder, two counts of attempted murder, two counts of willful injury, and intimidation with a dangerous weapon. Pursuant to a plea agreement with the State, Martinez pled guilty to two counts of intimidation with a dangerous weapon, *see* Iowa Code § 708.6(1) (2022), in exchange for dismissal of the other charges. He was sentenced to two consecutive indeterminate ten-year prison terms. Martinez appeals. Finding no abuse of discretion, we affirm.

Before his sentencing hearing, Martinez retained a psychologist to conduct a violence risk assessment. According to Martinez's account to the psychologist, he and nine associates drove to a high school to watch a fight. Martinez drove the second car in a three-car caravan. He knew several people in the cars had guns with them, but he "did not know why they were carrying firearms on this particular occasion." As they drove by the high school, the youths in the cars opened fire into a crowd, killing one person that someone in the cars had an issue with and injuring two others.

Defense counsel submitted the psychologist's report at the sentencing hearing. It summarized the adverse experiences Martinez encountered as a child (including witnessing the sexual assault of female relatives), the breakup of his parents, poverty, and his "development of problems with emotional regulation and conduct" and mental-health issues. Martinez became close with a group of young men he considered "brothers," some of whom "had a history of antisocial attitudes

or behavior that included carrying weapons such a knives or guns." Of the shooting, the report noted "Martinez's involvement may be characterized as limited or indirect" because he was in the group as a "follower rather than a leader," he "felt responsible or pressured to support the other group members," he was not armed, he "was not aware of any plan in several respects," and "[h]is actions during the shooting were limited to driving a vehicle." The report also noted Martinez's poor insight and judgment, which the psychologist said

> was the direct result of his vulnerability or susceptibility to the negative influence of other group members with antisocial attitudes, which in turn stemmed strong attachment to other group members and relative immaturity (i.e., he was less emotionally and socially mature than would have been expected based on his age and stage of development). Ultimately, both the latter factors can be traced back to serious disturbance of his familial relationships.

The psychologist concluded that a custodial sentence was "unlikely to mitigate any risk of crime or violence" and "may interfere with the gains" Martinez had made during the months before. He accordingly recommended a community sentence with supervision, monitoring, and treatment "for at least the next five to eight years." Highlighting these same considerations, defense counsel asked the court to follow the psychologist's recommendation and impose a suspended sentence.

The State, on the other hand, argued the report "heavily minimized" Martinez's role in the crimes when compared to his admissions in the plea proceeding: Martinez admitted he met up with others before a fight at the high school, there was a plan to shoot firearms into an assembly of people that Martinez actively encouraged, and he drove one of the vehicles knowing the others intended to provoke fear or anger by shooting firearms at others. The State recommended

consecutive terms of imprisonment, outlining the serious nature of the offenses, the different victims, and the aggravating circumstances. In the State's view, a custodial sentence would be a general deterrent and best provide for Martinez's rehabilitation—offering structure and the ability to pursue his education and participate in therapy and programming.

After receiving victim statements, the district court imposed its sentences:

> The court must consider the factors such as the age of the offender, the features of youthful behavior such as immaturity, impetuousness, failure to appreciate risk and consequences. Also to consider the family and home environment for the youth. The circumstances of the offense. The challenges for youthful offenders in navigating through the criminal process and the possibility of rehabilitation and capacity for change.
>
> The defendant has pled guilty and taken responsibility in Count I and Count II by pleading guilty to intimidation with a dangerous weapon. Now is the time that he must give accountability.
>
> I want to mention that all the victims' statements were very well done. Ms. [O.]'s compassion under the circumstances I find remarkable. More of a sermon than a charge. The words have a great impact.
>
> This crime that occurred is planned, premeditated, terroristic in nature. The idea of this happening in broad daylight, three cars, ten people, all the discharged firearms. I think there were numerous shots, tens. A particularly cruel offense with no regard for the safety of others. Two innocent people, not even a target, gunned down and their lives changed forever and the other one dead.
>
> The court has reviewed the presentence investigation report. I've also reviewed Dr. Hart's report. I tend to agree with [the prosecutor]. It does not contain all the facts and that there has been minimization in the report. The active driving of one of the cars involved in this entire act was aiding and abetting to these shootings and the defendant's actions were criminal and horrific.
>
> So at this time the defendant is hereby adjudged guilty of Count I, intimidation with a dangerous weapon, and sentenced to a term of incarceration not to exceed ten years. Count II, adjudged guilty of intimidation with a dangerous weapon sentenced to a term of incarceration not to exceed ten years.
>
> The court finds the sentences should run consecutive to one another for a total period not to exceed twenty years based upon the separate and serious nature of the offenses and to provide maximum

incentive for the defendant to comply with the terms and conditions when he will be released on parole.

Also to provide maximum opportunity for rehabilitation of the defendant and for the protection of the public. The public needs to be protected from acts of this nature. When people can't walk on streets in safety, near a high school, it is very sad and very telling about ourselves.

The court has considered all the factors in *Lyle*. I've also considered all the factors in section 907.5 of the Code of Iowa.

Martinez appeals,[1] claiming the court abused its sentencing discretion because it "allowed the nature of the offense to overwhelm its analysis" and gave only "lip service" to mitigating factors like his youth and immaturity. *See State v. Crooks*, 911 N.W.2d 153, 161 ("We review the district court's sentence for an abuse of discretion." (citation omitted)). In his view, the *Lyle* factors "demanded a probationary sentence."[2]

"When a sentence is not mandatory, the district court must exercise its discretion in determining what sentence to impose." *See State v. Millsap*, 704 N.W.2d 426, 433 (Iowa 2005) (citation omitted); *accord State v. Formaro*, 638

---

[1] Because Martinez is challenging his sentence and not his plea, he has established good cause to appeal as required by Iowa Code section 814.6(1)(a)(3) (2022). *See State v. Damme*, 944 N.W.2d 98, 105 (Iowa 2020).

[2] Those factors are:

(1) the age of the offender and the features of youthful behavior, such as "immaturity, impetuosity, and failure to appreciate risks and consequences"; (2) the particular "family and home environment" that surround the youth; (3) the circumstances of the particular crime and all circumstances relating to youth that may have played a role in the commission of the crime; (4) the challenges for youthful offenders in navigating through the criminal process; and (5) the possibility of rehabilitation and the capacity for change.

*State v. Lyle*, 854 N.W.2d at 378, 404 n.10 (Iowa 2014) (quoting *Miller v. Alabama*, 567 U.S. 460, 477–78 (2012)). "Our courts have sometimes called these the *Miller/Lyle/Roby* factors." *State v. Williams*, No. 18-2081, 2021 WL 593992, at *9, n.11 (Iowa Ct. App. Feb. 3, 2021); *see also State v. Majors*, 940 N.W.2d 372, 383-84 (Iowa 2020); *State v. Roby*, 897 N.W.2d 127, 135 (Iowa 2017).

N.W.2d 720, 725 (Iowa 2002) ("Judicial discretion imparts the power to act within legal parameters according to the dictates of a judge's own conscience, uncontrolled by the judgment of others."). There was no mandatory sentence applicable here. *See* Iowa Code § 901.5(13). As a result, the district court was "not required to specifically examine and apply each" *Lyle* factor, as Martinez seems to imply, although those factors remain relevant to the other sentencing options. *Crooks*, 911 N.W.2d at 173.

As the court in *Crooks* explained:

Once the sentencing court declines to impose a minimum period of incarceration without parole, the *Miller/Lyle* factors remain relevant in considering the remaining sentencing options, along with all other mitigating and aggravating circumstances. Yet the court is not required to specifically examine and apply each factor on the record at this point but considers all relevant factors in exercising its discretion to select the proper sentencing option.

*Id.* We may find an abuse of that discretion

if a sentencing court fails to consider a relevant factor that should have received significant weight, gives significant weight to an improper or irrelevant factor, or considers only appropriate factors but nevertheless commits a clear error of judgment by arriving at a sentence that lies outside the limited range of choice dictated by the facts of the case.

*Majors*, 940 N.W.2d at 385 (citation omitted). "[O]ur task on appeal is not to second guess the decision made by the district court, but to determine if it was unreasonable or based on untenable grounds." *Id.* at 387 (citation omitted).

Martinez's youth was a central issue at the sentencing hearing—it was highlighted in defense counsel's sentencing brief, the presentence investigation report, the violence risk assessment, and comments by defense counsel and the prosecutor. The court stated it considered Martinez's age, along with the "features

of youthful behavior" and other *Lyle* factors, before moving on to the circumstances of the crime. This was permissible. *See State v. Post*, 286 N.W.2d 195, 204 (Iowa 1979) ("Seriousness of a crime is clearly a permissible factor to be considered by the judge in determining the sentence to be imposed."); *cf. Majors*, 940 N.W.2d at 389 ("Our sentencing courts can and should consider the heinous nature of the crime in evaluating whether to impose a mandatory minimum sentence." (citation omitted)). And it did not overwhelm the court's analysis, as Martinez argues. *Cf. State v. Zarate*, 908 N.W.2d 831, 855 (Iowa 2018) (finding abuse of discretion when the court imposed a mandatory minimum sentence based on the "judge's belief that there 'should be [a] minimum period of time [for imprisonment] for somebody that takes the life of another individual, whether that person is a juvenile or an adult'" (alteration in original)).

In the end, the court found incarceration would provide "maximum opportunity for rehabilitation of the defendant and for the protection of the public." *See id.* at 854–55 (noting the "ultimate goal is to decide which sentence 'will provide maximum opportunity for the rehabilitation of the defendant, and for the protection of the community from further offenses by the defendant and others'" (quoting Iowa Code § 901.5)). We cannot say the sentences imposed "lie[] outside the limited range of choice dictated by the facts of the case." *See Majors*, 940 N.W.2d at 385. Because we find no abuse of the court's sentencing discretion, we affirm.

**AFFIRMED.**